IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIMBERLY S.,[1] | Case No. 3:18-cv-00173-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

AIKEN, District Judge:

Kimberly S. ("Plaintiff") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 2, 2016. For the reasons that follow, the Court AFFIRMS the Commissioner's Decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff applied for SSI and DIB on January 10, 2014. Following denials at the initial and reconsideration levels, an administrative law judge ("ALJ") held a hearing and issued an unfavorable decision on September 2, 2016. After the Appeals Council denied her request for review, Plaintiff filed a timely complaint in this Court seeking review of the ALJ's decision.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's findings, district courts act in an appellate capacity, not as the trier of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The district court must affirm the ALJ's decision unless it contains legal error or lacks substantial evidentiary support. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The complete record must be evaluated and the evidence that supports and detracts from the ALJ's conclusion

must be weighed. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon a claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Plaintiff had the following severe limitations: "Major depressive disorder, posttraumatic stress disorder, cannabis use disorder, alcohol abuse, and personality disorder (20 CFR 404.1520(c) and 416.920(c))." Tr. 23. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that Plaintiff

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform jobs that allow her to avoid exposure to hazards such as work around moving machinery and work around unprotected heights. She can understand and remember short and simple job instructions. She can perform simple, routine, repetitive tasks. The claimant can maintain attention and concentration for two-hour intervals to complete such tasks without more than the normally expected brief interruptions. The claimant can never work in a noisy, busy, and crowded environment. She can perform jobs that involve no more than frequent one-on-one contact with coworkers and no direct one-on-one contact with the general public. Additionally, she can perform jobs that do not involve any work with or around children.

Tr. 25. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a hand packager. Although not required, the ALJ went on to make an alternative finding at step five and found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including janitor and agricultural sorter. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

## DISCUSSION

There are three issues before me: (i) whether the ALJ gave sufficient reasons for discounting Plaintiff's symptom report; (ii) whether the ALJ gave sufficient reasons for discounting the report of Ms. Witkowski-Jones; and (iii) whether the ALJ included all of Dr. Boyd's limitations in assessing Plaintiff's RFC. Each issue is addressed in turn.

### I. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in discounting her subjective symptom testimony. I disagree.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing

so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and

treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6–7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ's decision to discount the severity of Plaintiff's symptom testimony was not legal error. First, the ALJ noted that Plaintiff's symptom allegations were inconsistent with her activities of daily living. For example, the ALJ explained that in describing her daily activities, Plaintiff reported that she was involved in a significant relationship, lived with a friend and her spouse, performed household chores without difficulty, prepared simple meals on a daily basis, shopped twice a month, watched TV, attended school, and regularly saw her friends. The ALJ founds these activities to be inconsistent with the severity of her symptom allegations, including depression, anxiety, and a tendency to isolate herself. *See*

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding an ALJ's credibility finding that claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for friend's child served as evidence of ability to work). In fact, engaging in daily activities may suggest that Plaintiff is capable of performing the "basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). In addition to performing daily activities, in January of 2015, Plaintiff reported that she had completed her associate degree, considered continuing her education, and was looking for employment. These inconsistencies are valid reasons for discounting Plaintiff's symptom allegations.

Second, the ALJ explained that Plaintiff's symptoms seemed to improve with treatment. Impairments that improve with treatment can undermine the severity of a plaintiff's symptom allegations. *See Tomasetti v. Astrue*, 553 F.3d 1035, 1040 (9th Cir. 2008). In December 2013, for example, Plaintiff saw Dr. Kaper, a psychologist, who recommended that Plaintiff stabilize her daily routine. Although Plaintiff complained of anxiety, she reassured Dr. Kaper that she felt better after taking care of some important life chores. Counseling notes in 2014 indicate that Plaintiff improved with consistent counseling and medication management. Additionally, when Plaintiff saw Deborah Flensborg, PMHNP, in 2015, she reported that she had discontinued counseling and medication despite complaints of increased symptoms. Ms. Flensburg restarted Plaintiff on medication and recommended she engage in therapy. In May 2015, Plaintiff discontinued counseling for six months and her

condition quickly worsened. However, after returning to therapy sessions in March and April 2016, Plaintiff reported that her mood was more stable, that she was taking college courses, and that she was preparing for final exams. And the same is true with respect to the treatment notes from Ms. Werner, a PMHNP; those notes suggest that although Plaintiff's symptoms worsen when she reports increased situational stressors, she improved quickly with consistent engagement in therapy and medication management.

Finally, the ALJ found that the gaps in Plaintiff's treatment history undercut the credibility of her symptom allegations. *See Fair*, 885 F.2d at 603 (stating that an "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding). For example, while Dr. Kaper observed that Plaintiff had a dysphoric mood in January 2014, the ALJ noted that Plaintiff did not continue treatment with Dr. Kaper and did not seek additional mental health counseling for six months. Plaintiff discontinued treatment for another six months from May 2015 until January 2016. When Chelene Glanker, QMHP, initially found that Plaintiff could transition to lower-level care, Plaintiff ceased counseling entirely.

While Plaintiff argues that the ALJ used "isolated periods of improvement" to discount Plaintiff's testimony and cites *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), that is not what the ALJ did in this case. In *Garrison*, the ALJ had "singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances" to discredit the plaintiff. 759 F.3d at 1018. The Ninth Circuit explained that the data points that an ALJ references "must *in*

Page 9 – OPINION AND ORDER

*fact* constitute examples of a broader development [but that] the record [in plaintiff's case] reveals a tortuous path: some symptoms came and went (*e.g.*, paranoia, hallucinations, pseudo-seizures), some symptoms persisted nearly the whole period (*e.g.*, insomnia, bouts of depression and mania), and still other symptoms appear to have remained a constant source of impairment (*e.g.*, intense anxiety)." Here, by contrast, there is reason to believe that Plaintiff's symptoms can be managed with a combination of medication and therapy based on medical records from 2013 to 2016. Many of her stressors have been situational in nature and the record indicates that they are reasonably manageable if the treatment plans suggested by her providers are followed.

For these reasons, I agree with the Commissioner that the ALJ did not err when he discounted Plaintiff's symptom testimony.

## II. Ms. Witkowski-Jones

Plaintiff argues that the ALJ improperly discounted Ms. Witkowski-Jones' report on Plaintiff's medical conditions. I disagree.

SSR 06-03p, which was in effect at the time Plaintiff filed her claim,[2] defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). Health care

---

[2] While still applicable to claims filed before March 27, 2017, the Commissioner has rescinded SSR 06-03p for claims filed on or after March 27, 2017. It has broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p, 2006 WL 2329939, at *5.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

If a medical professional provides testimony in the form of a standardized check-box questionnaire, the ALJ may disregard that testimony if it is not supported by an explanation or if it is inconsistent with other medical evidence. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1111–12. If a check-box questionnaire, however, is "based on significant experience . . . and supported by numerous records . . . [it is] entitled to weight that an otherwise

unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013.

Here, the ALJ appropriately discounted the opinion of Ms. Witkowski-Jones, a medical social worker ("MSW") and qualified mental health professional ("QMHP"). An MSW/QMHP is defined as an "other" medical source pursuant to SSR 06-03p, and thus, her opinion is not entitled to the same deference as an "acceptable" medical source. *Moon v. Colvin*, 139 F.Supp.3d 1211, 1222 (D. Or. 2015). To discount Ms. Witkowski-Jones's opinion, the ALJ only needed to give germane reasons. *Molina*, 674 F.3d at 1111. First, and as a threshold matter, Plaintiff cannot show that the ALJ erred simply by citing evidence that is consistent with her own interpretation of medical opinions; she must show that the ALJ lacked sufficient evidence to discount the opinion of Ms. Witkowski-Jones, which she has not done. *See Batson*, 359 F.3d at 1195. Second, the ALJ found that the results from Ms. Witkowski-Jones' check-box Mental Health Questionnaire were inconsistent with her own observations of Plaintiff and the longitudinal record. While the Questionnaire results suggest Plaintiff had severe symptoms of depression and anxiety, Plaintiff's thought process, thought content, orientation, motor activity, speech, appearance, and activity level were all unremarkable over much of Plaintiff's treatment. *See Tommasetti*, 533 F.3d at 1041 (incongruity between doctor's questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting a doctor's opinion). Ms. Witkowski-Jones also noted that Plaintiff had largely normal mental

status examinations and experienced quick improvement when Plaintiff engaged in regular counseling and medication management.

Finally, the ALJ found that Ms. Witkowski-Jones' opinion was inconsistent with the opinion of Dr. Cole, an acceptable medical source. While Ms. Witkowski-Jones found that Plaintiff had marked limitations in her daily activities, Dr. Cole found that Plaintiff was able to sustain simple, routine tasks as well as simple, multiple-step tasks. Unlike Ms. Witkowski-Jones, the ALJ found Dr. Cole's opinion to be consistent with his examination of Plaintiff.

These are germane reasons for discounting the opinion of Ms. Witkowski-Jones. Therefore, the ALJ did not err.

### III. Dr. Boyd

Plaintiff argues that the ALJ did not fully account for the opinions from Dr. Boyd, the State agency non-examining psychologist, and failed to account for the doctor's description of certain moderate limitations and his preclusion of one-on-one contact with coworkers. I disagree.

The ALJ's RFC finding need only include the credible limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000). The ALJ does not err by interpreting those specific, work-related limitations into the RFC. *Stubbs-Danielson*, 539 F.3d at 1174.

Here, the ALJ's assessment of Dr. Boyd's opinion was not legal error. The ALJ gave Dr. Boyd's opinion great weight because it was supported by substantial

evidence in the record. Despite the fact that Plaintiff had certain areas of moderate mental limitations, Dr. Boyd found that Plaintiff was capable of performing work that involved simple, routine tasks and instructions. The ALJ accounted for these limitations in the RFC finding and was not required to restate them verbatim. *See Stubbs-Danielson*, 539 F.3d at 1174.

Moreover, Plaintiff incorrectly relies on *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) and *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) to argue that an ALJ's RFC must include all limitations identified in a medical opinion to which he assigns great weight. But neither of these two cases support Plaintiff's proposition. Instead, the cited section of *Popa* reads that an ALJ may reject an uncontradicted medical opinion only if the ALJ provides clear and convincing reasons supported by substantial evidence in the record. *Id.* at 906. And *Tackett*'s cited section is about the relationship between a vocational expert's analysis and the RFC, not about the RFC and the medical opinions to which the ALJ gave great weight.

Plaintiff is also incorrect in suggesting that the ALJ overlooked her limitation on interacting with coworkers. Dr. Boyd found that Plaintiff would do better in environments without one-on-one contact with co-workers given her anger issues. The ALJ took this into consideration when he noted "objective mental status findings remain consistent with the ability to perform simple tasks with limited social interaction. . . ." And substantial evidence in the record indicates that Plaintiff is capable of limited social interaction, illustrated by Plaintiff having roommates and regularly seeing her friends. Considering Dr. Boyd's assessment, the ALJ found that

Plaintiff was capable of performing her previous job as a hand packer, among other jobs such as a janitor or an agricultural sorter. The ALJ, therefore, did not err in his assessment of Dr. Boyd's opinions and sufficiently took his limitations into account.

## CONCLUSION

The Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED

Dated this 14 day of June, 2019.

*Ann Aiken*
Ann Aiken
United States District Judge